UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD MOQUIN, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:06-cv-1871 (VLB) |
| AEROSPACE TECHNIQUES, INC., | : | |
|     Defendant. | : | January 22, 2008 |

## MEMORANDUM OF DECISION AND ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. #17]

The plaintiff, Richard Moquin, brings this case against the defendant, Aerospace Techniques, Inc. ("Aerospace"), his former employer, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Currently pending before the court is Aerospace's motion for summary judgment. [Doc. #17] For the reasons hereinafter set forth, the motion for summary judgment is GRANTED.

### I. Standard

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). If the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

"The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-

moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

## II. Facts

The following facts culled from the pleadings, and exhibits thereto, are relevant to the current motion. For purposes of this motion, the court accepts facts as true if undisputed by the parties and resolves issues of disputed fact in favor of Moquin as the non-moving party, where there is evidence to support his claims.

Aerospace is a supplier of machining services for industries that require precision-machine components, including the aircraft, aerospace and electronics industries. Moquin began working for Aerospace in 1972. For many of the approximately thirty-two continuous years of employment, Moquin worked as a machinist in the deburring department of Aerospace's Middletown, Connecticut, facility, including at the time of his termination. The deburring department is responsible for adding the finishing touches, such as grinding, polishing or buffing, to components that have been machined. Each distinct component requires a specific set of instructions for the deburring department.

Rolls-Royce was a major customer of Aerospace, accounting for about half the company's total sales from August through December 2004. In early 2005, Rolls-Royce informed Aerospace that it would not renew many of its existing contracts. Aerospace sold $7.6 million of components to Rolls-Royce in the fiscal year ending June 30, 2005. Aerospace sold only $1.6 million of

components to Rolls-Royce in the fiscal year ending June 30, 2006, a decline of more than 75 percent. As a result of the impending, significant decrease in Rolls-Royce business, Aerospace management decided to lay-off five employees, including one employee from the Middletown deburring department.

In early 2005, the Middletown deburring department consisted of four employees: the foreman, Keith Crockett, and three machinists, Moquin, Willie Harris and Edwin Irizarry. Moquin worked mostly on Rolls-Royce components, while Harris and Irizarry worked mostly on Pratt & Whitney components. Pratt & Whitney components require tighter tolerances than those sold to Rolls-Royce.

In June 2005, Aerospace management instructed Crockett to select which employee from the Middletown deburring department should be laid-off. Aerospace has asserted facts that Crockett observed the work product of all three deburring department machinists and determined which employee to lay-off based on those observations. Crockett selected Moquin to be laid-off after noticing that 1) Moquin worked primarily with Rolls-Royce components, 2) Harris and Irizarry worked mainly with Pratt & Whitney components, 3) Pratt & Whitney components require tighter tolerances than those for Rolls-Royce, and 4) Moquin was not as proficient or experienced as Harris and Irizarry at working with tighter tolerance components. Moquin was laid-off on July 27, 2005.

Moquin does not contest that Aerospace lost Rolls-Royce business in 2005, the extent of the Rolls-Royce business lost, that machinists in the deburring department must follow different specifications when working on

components for Rolls-Royce versus those for Pratt & Whitney, nor that he worked primarily on Rolls-Royce components while Harris and Irizarry worked primarily on Pratt & Whitney components. Moquin only denies that Crockett based his decision on which deburring department machinist to lay-off based on these factors. He does not elaborate on the allegation in the complaint that Aerospace chose Moquin to lay-off based on his age, and he offers absolutely no facts in support of that proposition.[1]

At the time he was laid-off, Moquin was sixty-four-years-old. Crockett and Harris were each allegedly age thirty-two; Irizarry was allegedly twenty.

### III. Discussion

Courts "analyze ADEA claims under the same framework as claims brought pursuant to Title VII. First, a plaintiff must establish a prima facie case of age discrimination. Once the plaintiff has made out a prima facie case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions. If the employer articulates such a reason, the plaintiff has the burden of proving that his age was the real reason for his discharge." <u>Schnabel v. Abramson</u>, 232 F.3d 83, 87 (2d Cir. 2000) (internal quotations and citations omitted).

Aerospace does not dispute that Moquin has established a prima facie case of discrimination under the ADEA. Moquin does not contest that Aerospace

---

[1] Moquin's affidavit in support of his opposition to this motion merely states "I believe that I was selected for termination because I was much older than my co-workers and the foreman." [Doc. #19, Ex. 1]

has articulated a legitimate, nondiscriminatory reason for terminating his employment. Accordingly, "to defeat summary judgment the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotations and citations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006).

Moquin has failed to assert any evidence in any of his pleadings, affidavits or discovery that could either establish or form the basis of a reasonable inference that Aerospace's decision to terminate him was based even in part on Moquin's age. His unsupported and unsubstantiated opinion that he was laid-off because Harris and Irizarry are comparatively younger is legally insufficient to survive the motion for summary judgment. This is particularly so in light of each machinist's specialized experience working with components for specific customers and the uncontroverted evidence offered by Aerospace that Crockett's decision regarding which machinist to lay-off was based solely on his evaluation of their performance and utility in satisfying the customers' requirements. In the absence of any evidence that Aerospace's uncontested, legitimate business reason to terminate Moquin's employment, the motion for summary judgment must be granted. See Graves v. Finch Pruyn & Co., 457 F.3d 181, 188 (2d Cir. 2006) (summary judgment appropriate where the plaintiff "has not pointed to any

record evidence indicating that [the defendant's] legitimate reason for the alleged adverse employment action is a pretext").

IV. Conclusion

For the reasons stated above, Aerospace's motion for summary judgment is GRANTED. There exist no issues of material fact that could lead a reasonable jury to conclude the legitimate business reason to lay-off Moquin articulated by Aerospace is a pretext for age discrimination.

The clerk shall terminate this action.

IT IS SO ORDERED.

/s/

Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: January 22, 2007.